Case 09-31129    Filed 06/10/09    Doc 13

FILED
June 10, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001885765

9 Pages
BUCHALTER NEMER
A Professional Corporation
   JEFFREY B. KIRSCHENBAUM (SBN: 152290)
   NEIL J. RUBENSTEIN (SBN: 77975)
   CRAIG C. CHIANG (SBN: 209602)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email: cchiang@buchalter.com

Attorneys for Secured Creditor
First Bank, a Missouri banking corporation

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| NCA FINANCIAL SERVICES, INC.,<br><br>Debtor. | Case No. 09-31129<br><br>DC No.: CCC-1<br><br>Chapter 7<br><br>**FIRST BANK'S EMERGENCY MOTION FOR ORDER (1) EXCUSING RECEIVER FROM TURNOVER [§543], AND (2) GRANTING RELIEF FROM THE AUTOMATIC STAY [§362]**<br><br>Date:<br>Time:<br>Courtroom: |

**TO THE HONORABLE MICHAEL S. McMANUS, THE CHAPTER 7 TRUSTEE, THE UNITED STATES TRUSTEE, THE DEBTOR, AND THE DEBTOR'S COUNSEL:**

     Secured Creditor First Bank, a Missouri banking corporation, in its individual capacity and as Administrative Agent pursuant to that certain Credit Agreement, dated as of March 30, 2006 ("First Bank"), hereby moves the United States Bankruptcy Court for the Eastern District of California ("Bankruptcy Court") for entry of an order (1) relieving Robb Evans & Associates, LLC ("Receiver") from the turnover requirement of 11 U.S.C. §543, and (2) terminating the

automatic stay to permit the Receiver to exercise all of its powers set forth in the Superior Court's Order Appointing Receiver *Ex Parte*, and to permit First Bank to exercise its lawful remedies under applicable law to protect its interest in collateral pledged to First Bank. This motion is supported by the Declarations of Liz Van De Vanter and Srinivasa Krishnan, all filed concurrently herewith.

I.

**INTRODUCTION**

This case mandates the retention of the Receiver. After failing in its efforts to convince the Superior Court of the State of California ("Superior Court") not to appoint the Receiver, NCA Financial Services, Inc. ("NCA Financial" or "Debtor") has filed this chapter 7 case with the sole, illegitimate, purpose of attempting to frustrate the Superior Court's desire to have an independent receiver take possession, custody and control of all assets of NCA Financial, National Credit Acceptance, Inc., and Columbia Credit Services, Inc. (collectively, "Receivership Companies"), all defendants in the Superior Court action,[1] and all controlled by the same individual, Michael T. Sahlbach ("Sahlbach"), president of all three Receivership Companies and a personal guarantor. All three Receivership Companies are now chapter 7 debtors with the Bankruptcy Court.[2] First Bank is simultaneously seeking relief in the bankruptcy cases of all three Receivership Companies. Of the three Receivership Companies, NCA Financial filed its Voluntary Petition first, with that case assigned to Judge Michael S. McManus and Trustee Hank Spacone.

There is absolutely no legitimacy to the Debtor's chapter 7 filing – the Debtor cannot receive a discharge and its unsecured creditors will never receive any distribution, meaningful or otherwise. The Debtor, the other Receivership Companies, and Sahlbach owe First Bank an amount in excess of **$26,125,311.67**, with payment obligations secured by substantially all of assets of the Receivership Companies. The Receivership Companies' assets consist primarily of

---

[1] The Superior Court action is entitled *First Bank v. National Credit Acceptance, Inc. NCA Financial Services, Inc., Columbia Credit Services, Inc. and Michael T. Sahlbach, et al.*, and has been designated as Case No. 34-2009-00044895

[2] On June 1, 2009, National Financial filed a chapter 7 voluntary petition, commencing its chapter 7 case, number 09-31129. On June 9, 2009, Columbia Credit Services, Inc. filed a chapter 7 voluntary petition, commencing its chapter 7 case, number 09-31634. On June 9, 2009, National Credit Acceptance, Inc. filed a chapter 7 voluntary petition, commencing its chapter 7 case, number 09-31658.

BN 3718581v2

2

**EMERGENCY MOTION FOR ORDER EXCUSING TURNOVER BY RECEIVER (§543) AND LIFTING THE AUTOMATIC STAY (§362)**

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

consumer finance receivables owned by National Credit Acceptance, Inc. ("NCA"), with the Receivership Companies acknowledging in the proceedings before the Superior Court that these receivables are worth at most $6,000,000. In the Voluntary Petitions filed by the Receivership Companies, the value of First Bank's collateral is even lower, with NCA stating at most $50,000, Columbia Credit Services, Inc. stating at most $500,000, and NCA Financial stating at most $1,000,000. Accordingly, First Bank is undersecured by no less than $20,000,000. The clear implications are that the Receivership Companies' assets, and especially those of the Debtor are fully encumbered by First Bank's perfected security interest.

      Rather than adhere to the Superior Court's Order Appointing Receiver Ex Parte, et al. ("Receivership Order") that directs the Receivership Companies and Sahlbach to cooperate <u>fully</u> with the Receiver, the Debtor filed this instant case, the continuation of which is not supported by any bankruptcy policy.[3] If the Receiver is to garner whatever value remains in the Receivership Companies and overcome the unscrupulous delaying tactics of the Receivership Companies and Sahlbach, it must be permitted to move quickly in a concerted effort, retaining the rights granted to the Receiver by the Superior Court over all three Receivership Companies. As set forth further detail in the Declaration of Srinivasa Krishnan, the Receiver has made significant progress in its efforts to collect and preserve assets. Any delay in allowing the Receiver to proceed is likely to result in fewer assets being collected and preserved.

      The Debtor's bankruptcy estate will not be prejudiced, as the Debtor's assets are fully encumbered. In addition, First Bank agrees that nothing in this Emergency Motion seeks to waive the rights of the duly appointed, qualified, and acting Chapter 7 trustee ("Trustee") to investigate the Debtor's property and First Bank's rights thereto. In addition, First Bank agrees that the Receiver will not turnover any funds without further approval of the Bankruptcy Court.

      The Bankruptcy Court cannot allow the Debtor, the Receivership Companies, and Sahlbach, the common president to all of them, to misuse the Bankruptcy Court to attempt to thwart the Superior Court's appointment of the Receiver to take custody, control and possession

---

[3] A true and correct copy of the Superior Court's Order Appointing Receiver Ex Parte; Order to Show Cause Why Receiver should not be Confirmed; Temporary Restraining Order; and Order to Show Cause Why Preliminary Injunction Should not be Granted is attached to the Declaration of Srinivasa Krishnan as Exhibit C.

BN 3718581v2      3

of the assets of the Receivership Companies. The gamesmanship in filing a Chapter 7 case, with the hope of creating ambiguity in the scope of the Receiver's authority, cannot be rewarded. First Bank is seeking entry of an Order in the form that is submitted concurrently herewith.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural justification for excusing the Receiver from turnover requirements and for granting First Bank relief from the automatic stay is compelling, and supports the emergency relief sought by First Bank before the Bankruptcy Court.

On May 28, 2009, after considering First Bank's *Ex Parte* Application for Order Appointing Receiver, etc. (the "Receivership Application")[4] and the Receivership Companies' Opposition thereto, the Superior Court appointed the Receiver "with the full, usual, customary powers of an equity receiver" over the Receivership Companies, including any affiliates, subsidiaries, divisions, or field operations.

The Superior Court made the determination that the Receiver was needed to take immediate possession, custody, and control of all assets of the Receivership Companies, with the full power to sue for, collect, receive, and manage all assets wherever located. In granting these sweeping powers, the Superior Court recognized the exigency faced by First Bank with the dissipation of its collateral, and the need to place the Receivership Companies under the control of a single receiver, Robb Evans & Associates.[5] In appointing the Receiver on an *ex parte* basis, the Superior Court considered these key facts:

- Under the terms of a Credit Agreement between First Bank and NCA (the "Credit Agreement"), and related Guaranties (the "Guaranties"), the Receivership Companies and Sahlbach owe First Bank at least $26,125,311.67.[6]

- NCA is a purchaser and servicer of consumer finance receivables, comprised mostly of tens of thousands of credit card debts owed individuals and small businesses. NCA keeps, tracks, and maintains important information about the credit card debts that it

---

[4] A true and correct copy of First Bank's *Ex Parte* Application for Order Appointing Receiver, etc. (the "Receivership Application") is attached to the Request for Judicial Notice as Exhibit __.
[5] This exigency is set forth in detail in the Receivership Application.
[6] The Declaration of Liz Van De Vanter in Support of this Emergency Motion includes true and correct copies of the Credit Agreement, the Guaranties, the Security Agreement, First Banks Uniform Commercial Code filing, and other related loan documents.

BN 3718581v2         4

**EMERGENCY MOTION FOR ORDER EXCUSING TURNOVER BY RECEIVER (§543) AND LIFTING THE AUTOMATIC STAY (§362)**

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

- owns and services on mainframe computers.

- Information kept on the mainframe computers includes the credit card debtors' names, addresses, and telephone numbers, amounts due, payment histories, and a log of the communications between NCA's employees and thousands of debtors.

- NCA's main operating application is the Columbia Ultimate Business System ("CUBS"), which runs the collection modules, including the receipt and posting of payments to respective pool borrower individual accounts.  NCA owns the system codes for CUBS.

- To secure their obligations under the Credit Agreement and Guaranties, the Receivership Companies pledged to First bank substantially all of their assets, including, but not limited to, all right, title, and interest in Accounts, money, Chattel Paper, Deposit Accounts, Documents, Equipment, Inventory, other Goods, General Intangibles, Instruments, and Proceeds.

- In addition, the Receivership Companies granted to First Bank an irrevocable, non-exclusive license (exercisable without payment of royalty or other compensation) to use, license, or sublicense any Collateral[7] consisting of Intellectual Property.

- There are pending hundreds of collection actions throughout the United States involving First Bank's collateral, some of which may require immediate attention.

- The Receivership Property consists of assets that are completely mobile and highly susceptible to transfers, concealment, and dissipation.

- The Receivership Companies and Sahlbach, through their counsel, advised the Superior Court that, just days before the hearing on the Receivership Application, NCA vacated all of its premises, returned the mainframe computers to an undisclosed location, terminated all employees, and actively dwindled all of First Bank's expansive collateral into a single CD and 150 storage boxes.  In addition, the location of the CUBS operating application is now unknown.

Recognizing that First Bank bargained for more than a single CD with raw data and 150 boxes of paper (presumably compiled by the Receivership Companies and Sahlbach), with no oversight as to their completeness, the Superior Court appointed the Receiver and issued a temporary restraining order enjoining the Receivership Companies and Sahlbach.  The Receiver is best equipped to continue with its efforts already underway in pursuing First Bank's collateral.  The Declaration of Srinivasa Krishnan, an Executive Vice President with the Receiver, sets forth in detail the Receiver's efforts since its appointment and the ongoing hurdles put in place by the Receivership Companies.  The exigency that compelled the *ex parte* appointment of the Receiver is only magnified here and supports excusing the Receiver from turnover and lifting the stay.

---

[7] Capitalized terms not defined herein are as defined in the Credit Agreement, the Security Agreement, the Guaranty, and related loan documents (collectively, the "Loan Documents").

BN 3718581v2

5

**EMERGENCY MOTION FOR ORDER EXCUSING TURNOVER BY RECEIVER (§543) AND LIFTING THE AUTOMATIC STAY (§362)**

## III.

## LEGAL ARGUMENT

**A.    The Receiver Must Be Permitted To Remain In Place As The Requirements Of Bankruptcy Code Section 543(d)(1) Are Satisfied.**

The Receiver, with powers over all three Receivership Companies, and a temporary restraining order in hand, is best equipped to investigate the actions of the Receivership Companies and Sahlbach, and to preserve the assets of the Receivership Companies, First Bank's collateral.

Subsection (d)(1) of Section 543 of the Bankruptcy Code authorizes the Bankruptcy Court to excuse a receiver from requirements under subsections (a), (b), and (c) if the interests of creditors would be better served by permitting the receiver to continue in possession, custody, and control of property. Considering the facts of this case, the Receiver is clearly in a position to ensure that the interests of creditors are better served.

While the Bankruptcy Code does not set forth a specific test for making such a determination, Courts have established several exemplary criteria for making this determination: (1) the likelihood of successful reorganization; (2) the probability that funds required to reorganize will be available; (3) whether there are prior instances of mismanagement by the Debtor.[8] Here, those questions are easily answered. There is no likelihood of a successful reorganization or that funds required to reorganize will be available, as the Debtor has no assets and is not reorganizing. In addition, the Debtor is not a debtor in possession, and the Trustee retains all rights to investigate the Debtor's assets and First Bank's rights thereto.

Other creditors have no hope of recovery unless the Receiver, through the powers afforded to it under the Receivership Order, can identify assets of the Debtor and enhance their value. The Receiver already has moved in this direction. First Bank is about $20,000,000 undersecured, and it and the Receiver have a substantial interest in identifying collateral and enhancing its value. There is no reason to believe that other creditors' interests will suffer by

---

[8] *See In re Poplar Springs Apartments of Atlantic, Ltd.*, 102 B.R. 146 (Bankr. S.D. Ohio E.D. 1990) *In re Uno Broadcasting Corporation*, 167 B.R. 189 (Bankr. [DA] 1994).

BN 3718581v2

keeping the Receiver in place, especially since the rights of the Trustee to investigate the Debtor's property and First Bank's rights thereto are expressly reserved.

The Debtor did not file its chapter 7 case in good faith for the benefit of its creditors. Instead, the Debtor's filing is part of a bad faith scheme to hinder and delay First Bank's exercise of its legitimate rights and remedies with respect to First Bank's collateral. This Bankruptcy Case was initiated for the sole purpose of hampering the Receiver's ability to exercise its rights and remedies with respect to the Receivership Property, not to better serve the interests of the Debtor's creditors through any asset liquidation. Thus, it is imperative that immediate steps be taken to allow the Receiver to continue taking possession and control of the Receivership Property in order to ensure that there is no further attempt by the Receivership Companies to transfer, convey, remove, conceal, or otherwise dissipate any aspect of the Receivership Property.

Based upon the above, abundant cause exists to excuse the Receiver from the turnover and other requirements of sections 543, to allow the Receiver to continue its duties and to prevent further waste and irreparable injury to the Receivership Property.

**B.     The Automatic Stay Must Be Lifted To Permit The Receiver To Exercise Its Powers Under the Receivership Order And To Permit First Bank To Exercise Its Rights And Remedies To Its Collateral.**

### Lack of Equity and Reorganization

Section 362(d)(2) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay – ... (2) with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization...

The Ninth Circuit Court of Appeals has held that for purposes of section 362(d)(2), "equity" is "the difference between the property value and the total amount of liens against it." Stewart v. Gurley, 745 F.2d 1194, 1195 (9th Cir. 1984).

Under the Loan Documents, the Debtor is obligated to pay First Bank no less than

$26,125,311.67. The Receivership Order, including the temporary restraining order, provides the Receiver with powers over all three Receivership Companies and a temporary restraining order in hand, to investigate the Debtor's assets. However, at this point, it is clear that First Bank's security encumbers all of the Debtor's assets. Consequently, the Debtor's estate has no equity in the Debtor's assets.

In addition, because this is a Chapter 7 proceeding, there is no reorganization in prospect. As such, First Bank is entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code.

### Cause Exists To Lift The Automatic Stay

Section 362(d)(1) provides that the Court "shall grant relief from stay … for cause, including the lack of adequate protection of an interest in property…." Cause exists to grant First Bank relief from the automatic stay to exercise its rights to its Collateral, including continuing to exercise its rights through the action before the Superior Court as it relates to the Debtor. First Bank is informed and believes that the Debtor is unable to provide adequate protection to First Bank and that there is no probability that adequate protection can be afforded to First Bank. The automatic stay must be modified to enable the Receiver to complete the process of taking possession, custody, and control of the assets of the Receivership Companies and to exercise its rights and powers under the Receivership Order.

Given the nature of the Collateral, the probability that it will be conveyed, removed, or concealed is high. The Receiver and First Bank are in the dark regarding vital information relating to the Debtor's financial situation. The automatic stay must be lifted to allow the Receiver to continue in its duties and powers as granted by the Superior Court, and to permit First Bank to exercise all of its lawful rights and remedies against the Debtor. First Bank acknowledges that this Motion is without prejudice to the Trustee's rights to investigate the Debtor's assets and First Bank's rights thereto.

## I.

## CONCLUSION

First Bank's collateral is in severe jeopardy each day that the Receiver is not provided

with the unfettered authority to exercise its rights under the Receivership Order, and it is critically urgent that the Receiver safeguard the dwindling collateral value.  The Receivership Companies claim to have ceased business operations, and have provided the Receiver with a single CD, which they claim contains substantially all of First Bank's collateral.  The Superior Court recognized that the Receivership Companies had no right to designate the scope of First Bank's collateral.  Allowing the Receiver to remain in place, and lifting the automatic stay, is in the best interest of the Debtor's creditors.

DATED:  June 10, 2009                    BUCHALTER NEMER
                                         A Professional Corporation


                                         By: /s/ Craig C. Chiang
                                         Craig C. Chiang
                                         Attorneys for Secured Creditor,
                                         FIRST BANK, a Missouri banking
                                         corporation, in its individual capacity and as
                                         Administrative Agent pursuant to that certain
                                         Credit Agreement, dated as of March 30, 2006,
                                         as Administrative Agent